IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Ismail Dickerson, | ) | C/A No.:1:09-2268-RMG-SVH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| City of Charleston Police Department; Officer LaFromboise; Officer Engles; Officer Cone; Sgt. McBrayer; and MPO-K9 Officer D. Tharp, | ) | |
| Defendants. | ) | |

Plaintiff, who is proceeding pro se in this action, has alleged violations of his constitutional rights, which are construed as brought pursuant to 42 U.S.C. § 1983. Plaintiff is currently incarcerated at Charleston County Detention Center ("CCDC") on other grounds unrelated to this lawsuit. Before the court are: (1) Defendants' Motion for Summary Judgment [Entry #25]; and (2) Plaintiff's Motion for Summary Judgment [Entry #32]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment are dispositive motions, this Report and Recommendation is entered for review by the district judge.

I.  Factual and Procedural Background

Plaintiff filed his complaint in this action on August 28, 2009. Defendants filed a motion for summary judgment on June 8, 2010. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and

dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motion. [Entry #26]. Plaintiff filed a timely response in opposition to Defendants' Motion. [Entry #31]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied.

The incident giving rise to this action occurred on November 25, 2007. The following facts are either alleged by Plaintiff or alleged by defendants and undisputed by Plaintiff. A victim[1] called 911, alleging a person was threatening to force entry into and "shoot up" her residence if she did not give him money. Engles Aff. ¶ 4 [Entry #29]. Officers LaFromboise and Engles responded to the call and spoke to the victim, who described the perpetrator as a tall and skinny black male with dreadlocks. She stated that although she did not see a firearm, she firmly believed the person possessed a firearm due to his threats. Vargo Aff. [Entry #1-1 at 5]. LaFromboise and Engles arrived at the victim's house located Plaintiff, who was talking on his cell phone, and approached him, identifying themselves as police officers. *See* Incident Report [Entry #1-1 at 8]. According to Defendants, Plaintiff began to slowly walk away from the officers. *Id*. Plaintiff then began to run from police officers while pulling his jacket over his right hand and shouting "I have a gun! I'm gonna shoot you!," while pointing at the officers. *Id*. The

---

[1] The victim, Jenny Vanhannegeyn, was a named Defendant in this case, but was dismissed on December 11, 2009.

officers pulled their weapons and pointed them at Plaintiff while giving loud verbal commands for him to stop running. *Id.*

After a foot chase, Plaintiff barricaded himself behind a vehicle. *Id*. Defendants assert that, because of the Plaintiff's position behind the vehicle and because of the possible threat that the Plaintiff possessed a firearm, LaFromboise and Engles called Officer Tharp and K-9 Odde to assist in apprehending the Plaintiff. According to the incident report, upon arrival, Tharp was unable to see Plaintiff's hands because Plaintiff was positioned behind a vehicle. Tharp Aff. ¶ 7 [Entry #25-5]. Tharp contends he issued three loud verbal commands for Plaintiff to show his hands and warned Plaintiff that K-9 Odde would be released if he did not obey the command. *Id.* at ¶ 8-9. After failing to comply, K-9 Odde was released to apprehend Plaintiff. *Id.*

Plaintiff alleges defendants LaFromboise, Engles, and Cone approached him "with extreme force" and punched him and beat him until he fell to the ground. Compl. at 3 [Entry #1]. He claims that once he was on the ground, the officers began kicking him, and defendants McBrayer and Tharp also kicked him when they arrived on the scene. *Id.* Plaintiff claims that while he was lying on his stomach, one of the officers put his knee on Plaintiff's neck and another officer put Plaintiff's left hand behind his back. *Id.* He alleges another officer stretched out Plaintiff's right arm and began tapping on his right shoulder. *Id.* According to Plaintiff, Tharp then commanded K-9 Odde to bite Plaintiff, which he did. *Id.* He was subsequently handcuffed and taken to the hospital, where the records show Plaintiff sustained two broken ribs and bite marks on his right shoulder.

3

[Entry #1-1 at 1]. He was then taken to the CCDC, where he was charged with attempted armed robbery, attempted burglary in the first degree, and resisting arrest.

The armed robbery and attempted burglary charges were dismissed at Plaintiff's preliminary hearing and the resisting arrest charge was subsequently nol prossed. Plaintiff seeks damages of $57 million from Defendants. Further, Plaintiff requests that every police officer involved in his arrest be terminated from the City of Charleston Police Department ("CPD") and be forever barred from obtaining employment with any law enforcement agency. Next, Plaintiff seeks to have his medical bills paid by the CPD. Finally, the Plaintiff seeks to have K-9 Odde terminated from the CPD so that Plaintiff or a family of his choice may adopt him.

II.  Discussion

   A.  Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." *Id*. The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be no genuine issue of material fact.

B.  Analysis

1.  City of Charleston Police Department

Plaintiff named the City of Charleston Police Department ("CPD") as a defendant. However, under 42 U.S.C. § 1983, only a "person" may be sued. Defendant CPD is a department and is not a person subject to suit under § 1983. *See Carter v. Georgetown County Sheriff's Department*, 2009 WL 1393509 at *3 (D.S.C. 2009) ("It is well settled that only 'persons' may act under color of state law, therefore, a defendant in a § 1983 action must qualify as a 'person.'"). Inanimate objects such as departments, buildings,

5

facilities, and grounds cannot act under color of state law. Therefore the undersigned recommends summary judgement be granted as to the CPD.

2.   False Arrest/Imprisonment

The standard to determine the lawfulness of an arrest is whether probable cause existed. *Park v. Shiflett*, 250 F.3d 843 (4th Cir. 2001). When a court examines the existence of probable cause, it will "examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) (citations omitted). In order to show probable cause, there only needs to be "enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed." *Id.* "Probable cause requires more than bare suspicion but requires less than evidence necessary to convict." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998). As a result, in order to prove an absence of probable cause, the Plaintiff "must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" Plaintiff was involved in the charged offense. *Brown v. Gilmore*, 278 F.3d 362 (4th Cir. 2002). To make the probable cause determination, a court should consider "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Gantt v. Whitaker*, 57 Fed.Appx. 141 (4th Cir. 2003) (unpublished opinion) (citing *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)). The Fourth Circuit has held:

> Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at

the time the challenged action was taken. . . . This is a fact-specific inquiry. . . . [I]n order to satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable.

*Mazuz v. Maryland*, 442 F.3d 217, 224 (4th Cir. 2006) (internal citations omitted).

In the instant case, Plaintiff has failed to allege a set of facts that show it was unreasonable for defendants to have concluded that Plaintiff was involved with the charged offenses. Specifically, Defendants assert and Plaintiff has not disputed, the following facts: (1) the victim in this case dialed 911 and alleged that a person meeting Plaintiff's description threatened to use a firearm if she did not give him money and threatened to force entry into her residence; (2) when LaFromboise and Engles located the Plaintiff, approached him, and identified themselves as police officers, he first walked away and then began running; (3) while running away, Plaintiff pulled his jacket over his right hand and shouted "I have a gun! I'm gonna shoot you!" while pointing at LaFromboise and Engles.[2] *See* Engles Aff., LaFromboise Aff. ¶¶ 4-9 [Entry #29, #34-2]. Additionally, when Defendants attempted to take Plaintiff into custody, he refused to place his arms behind his back after they attempted to gain compliance from him. *See* Tharp Aff., ¶ 11 [Entry #25-5].

---

[2] Plaintiff argues in his response to summary judgment that Defendants have failed to prove these facts. The undersigned disagrees, as Defendants submitted affidavits swearing to these facts, and Plaintiff failed to deny the facts through affidavit or otherwise.

Ultimately, under the totality of the circumstances, Defendants were not unreasonable in believing there was probable cause to arrest Plaintiff for attempted armed robbery, attempted burglary, and resisting arrest. Although Plaintiff notes that certain charges were dismissed at his preliminary hearing, the requisite probable cause is determined at the time of arrest, and not under the beyond a reasonable doubt standard required to convict. As such, Plaintiff's claims for false arrest and false imprisonment must fail. *See Palmore v. Wal-Mart*, 2009 WL 1457136 at *5 (D.S.C. 2009) (citing *Jones v. City of Columbia*, 301 S.C. 62, 64, 389 S.E.2d 662, 663 (1990)).

3. Excessive Force

Claims that law enforcement officials have used excessive force in the course of an arrest are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Determining whether the force used to carry out a particular arrest is "unreasonable" under the Fourth Amendment requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). The outcome of this balancing test necessarily depends on the facts and circumstances of the particular case. *Garner*, 471 U.S. at 8–9 (question is "whether the totality of the circumstances justifie[s] a particular sort of search or seizure"). Factors to consider in this analysis include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

arrest by flight." *Graham*, 490 U.S. at 396. Further, the analysis "must embody allowances for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain and rapidly evolving–about the amount of force that is necessary in a particular situation." *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009). Next, "[t]he court must also consider the extent of the injuries caused to the plaintiff." *Lassiter v. Reece*, 2008 WL 2852164 at *4 (D.S.C. 2008) (citing *Jones v. Buchanan*, 325 F.3d 520, 530–31 (4th Cir. 2003)).

An officer's subjective motivations have no bearing on this analysis. *See Unus*, 565 F.3d at 117. In this case, the standard for the use of force is "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others." *Garner*, 471 U.S. at 11. Ultimately, "[this Court's] focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection," *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001), as officers do not always have " even a moment to pause and ponder" a Fourth Amendment analysis when attempting to apprehend a suspect. *Waterman v. Batton*, 393 F.3d 471, 478 (4th Cir. 2005).

Here, the actions of Defendants were objectively reasonable under the facts and circumstances they faced. First, from the reports of the victim and the actions of Plaintiff, Defendants had reason to believe that he committed an attempted armed robbery and attempted burglary. Next, from their observations, it was clear that the Plaintiff was attempting to avoid arrest. Further, although they did not see a firearm on the Plaintiff, it

9

was reasonable to assume, both for their own safety as well as the safety of any bystanders, that Plaintiff possessed a firearm when he pulled his jacket over his right hand and shouted "I have a gun! I'm gonna shoot you!" Additionally, although the Defendants could have approached the Plaintiff without the use of K-9 Odde, "[t]he Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm." *Id.* at 479. Finally, the Defendants followed proper procedure in releasing K-9 Odde to apprehend the Plaintiff. As this court has recognized, "the use of police dogs can (1) prevent officers from having to resort to deadly force and (2) protect the officers from being subjected to deadly force used against them by suspects attempting to avoid arrest." *Mickle v. Ahmed*, 444 F.Supp.2d 601, 611 (D.S.C. 2006) (citing *Robinette v. Barnes*, 854 F.2d 909, 913 (6th Cir. 1988)).

Finally, although Plaintiff alleges Defendants kicked him while he was down, the Plaintiff appears to concede that any force by Defendants stopped once he was handcuffed. Compl. at 3 [Entry #1]. Plaintiff was taken to the hospital before going to the CCDC and his medical records indicate that he suffered "subtle non-displaced left eighth and ninth posterolateral rib fractures" and a dog bite on his right shoulder. In *Wilson v. Flynn*, the Fourth Circuit found it significant "that [the Plaintiff] admit[ted] that the allegedly excessive force ceased after the officers handcuffed him." 429 F.3d 465, 469 (4th Cir. 2005). "This fact supports the finding that the force used by the officers was that force which was necessary to affect the arrest of an aggressive individual in a rapidly changing environment." *Id.* Here, like *Wilson v. Flynn*, although Plaintiff did suffer rib

10

fractures during the struggle, the force by Defendants stopped once the officers effected the arrest of Plaintiff.

Ultimately, under the *Graham* test, Defendants' actions, both in releasing K-9 Odde to assist in apprehending Plaintiff and in using necessary force to apprehend Plaintiff prior to placing him under arrest, were objectively reasonable and did not violate Plaintiff's Fourth Amendment rights. Therefore, Defendants are entitled to summary judgment regarding the Plaintiff's § 1983 claims for excessive force.

III. Conclusion

For the foregoing reasons, the undersigned recommends Defendants' Motion for Summary Judgment [Entry #25] be granted and Plaintiff's Motion for Summary Judgment [Entry #[32] be denied.

IT IS SO RECOMMENDED.

*[signature]*

December 17, 2010  Shiva V. Hodges
Florence, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**